IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
DEC -9 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Charles W. Witt, )
    Plaintiff, )
 )
v. ) 1:10cv1164 (LO/IDD)
 )
Dr. Chaudry, et al., )
    Defendants. )

### MEMORANDUM OPINION

Charles W. Witt, who is civilly committed to the Virginia Center for Behavioral Rehabilitation ("VCBR"), has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and deliberate indifference to his serious medical needs. The matter is presently before the Court on the separate Motions for Summary Judgment of Officers Ryan Ervin and D. Abdussalaam, and of Dr. Ramesh Chaudry.[1] Defendants submitted memoranda of law and exhibits in support of their positions, and provided plaintiff with notice and an opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed no reply. For the reasons which follow, defendants' Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor.

### I. Background

The following material facts are uncontested. On May 18, 2010, Witt was transported

---

[1] The pleading filed by Officers Ervin and Abdussalaam is captioned as a Motion to Dismiss and/or Motion for Summary Judgment. Because the motion and exhibits present matters outside the plaintiff's pleadings, it will be construed as a motion for summary judgment. Fed.R.Civ. P. 12(b)(6).

from VCBR to St. Mary's Hospital for an endoscopy, an outpatient procedure. Dkt. 22, Ex. 2. While Witt was being transported, his hands were placed in "soft restraints," which consisted of a cloth strap, a metal clasp, and a plastic insert that was placed between the metal and the skin. Dkt. 22, Ex. 3, Declaration of Ryan Ervin, hereinafter "Ervin Dec.," ¶ 4. When Witt was returned to VCBR, the transportation officers discovered that the plastic inserts on his restraints were missing, and VCBR staff had determined them to be contraband. The officers accordingly informed the facility of the situation. Id.

Pursuant to VCBR Policy 6.13 § 6, entitled "Unclothed Visual Examinations," Dkt. 22, Ex. 5, defendants Ryan and Abdussalaam as members of VCBR's Emergency Response Team were instructed to go to the sallyport to search Witt for the missing contraband. Ervin Dec. ¶ 4; Dkt. 22, Ex. 4, Declaration of D. Abdussalaam, hereinafter "Abdussalaam Dec.," ¶3. Ervin was told that the examination had been authorized by Dr. Steven Herrick, Acting Director of VCBR, as required by policy, Ervin Dec., ¶ 4;[2] neither Ervin nor Abdussalaam was made aware that Witt was returning from the hospital after undergoing a medical procedure. Ervin Dec., ¶¶ 5, 9; Abdussalaam Dec. ¶¶ 4, 8. Defendants entered the small building in the sallyport where Witt was being held and, in accordance with VCBR policy, all of the windows and doors of the building were closed and only the defendants were present, to provide Witt with the maximum possible privacy. Ervin Dec. ¶ 6; Abdussalaam Dec. ¶¶ 5-6. At defendants' request, Witt removed his clothing, squatted, and coughed, and then redressed himself immediately. Ervin

---

[2] Dr. Herrick initially was named as a defendant in this action. By Order dated March 16, 2011, Dr. Herrick, along with additional defendants Chad Houser and Duncan Benton, were dismissed pursuant to 28 U.S.C. § 1915A for plaintiff's failure to state a claim against them. Witt's original claims of First and Fourth Amendment violations, violation of his right to equal protection, and assault and battery also were dismissed pursuant to § 1915A in the same Order. Dkt. 13.

Dec. ¶ 7; Abdussalaam Dec. ¶ 6. Defendants never touched Witt during the examination, nor did they threaten to do so, and they made no insulting or humiliating comments. Ervin Dec. ¶ 8; Abdussalaam Dec. ¶ 7. Witt never told defendants that he had undergone a medical procedure, he did not complain of pain or discomfort, and defendants noted no signs of injury or physical distress. Ervin Dec. ¶ 9; Abdussalaam Dec. ¶ 8. Defendants were in the small building with Witt for a total of between five and ten minutes. Ervin Dec. ¶ 11; Abdussalaam Dec. ¶ 10.

After Witt redressed himself, Officers Ervin and Abdussalaam escorted him to the VCBR medical department, because all residents who leave the facility are processed through medical upon their returns. Ervin Dec. ¶ 10; Abdussalaam Dec. ¶ 9. Because the soft restraints were inoperable without the missing plastic inserts, defendants handcuffed Witt to walk from the sallyport to the medical department. Ervin Dec. ¶ 10; Abdussalaam Dec. ¶ 9. At no time while Witt was in defendants' custody did he complain of pain, discomfort or injury, and defendants remained unaware that he was returning from the hospital after having a medical procedure. Ervin Dec. ¶ 9; Abdussalaam Dec. ¶ 10. After defendants delivered Witt to the medical department, they returned to their assigned stations. Ervin Dec. ¶ 11; Abdussalaam Dec. ¶ 9.

Defendant Dr. Chaudry, who was on duty in the medical department when Witt arrived, learned from security staff that pieces were missing from Witt's soft restraints. Dkt. 21, Ex. 1, Affidavit of Ramesh D. Chaudry, M.D., hereinafter "Chaudry Aff.," ¶3. Chaudry was apprised that Witt had been searched but that the pieces had not been located, and he was asked to make a medical determination as to whether a body cavity search was necessary. Chaudry Aff., ¶ 4. Chaudry assessed Witt and asked how he felt, and found that Witt was not in any physical distress. When Chaudry told Witt the purpose of the visit, Witt became angry and complained

3

about being "strip searched" in the sallyport. Chaudry Aff., ¶ 5. Based upon his medical assessment and clinical judgment, Chaudry determined that a body cavity search of Witt was not necessary, and no such search was performed. Chaudry Aff., ¶¶ 6-7.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair

doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Witt claims that Officers Ervin and Abdussalaam violated his rights under the Eighth Amendment by using excessive force and being deliberately indifferent to his serious medical needs.[3] Witt also alleges that Dr. Chaudry exhibited deliberate indifference in violation of the Eighth and Fourteenth Amendments. For the reasons which follow, none of these claims has merit, and defendants are entitled to the summary relief they seek.

A. Defendants Ervin and Abdussalaam

In determining whether a complaint states an Eighth Amendment claim that defendants

---

[3] Defendants Ervin and Abdussalaam argue as a threshold matter that plaintiff's claims under the Eighth Amendment should be dismissed because he is civilly committed to VCBR, a treatment facility for individuals who are found to be sexually violent predators. As such, they reason, plaintiff's present incarceration is not punitive in nature, so the Eighth Amendment does not apply. Defendants' position is legally correct. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Hicks v. James, 255 Fed. App'x 744 (4th Cir. 2007) (finding that "the Eighth Amendment ... is not available for challenges to the conditions of civil commitment...."). Nonetheless, while a civil detainee's claims may properly arise under the Due Process Clause, "the legal standard employed for civil commitment claims under the Due Process Clause is largely the same as that used in analyzing prisoners' Eighth Amendment claims." Hicks, 255 Fed. App'x at 744, n. 3; see also, Hydrick v. Hunter, 466 F.3d 676, 696 (9th Cir. 2006) (noting that "[t]he standard applicable to [sexually violent predators] under the Fourteenth Amendment are *at least* coextensive with that applicable to prisoners under the Eighth Amendment.")(emphasis original). Therefore if, as here, the claim of a civilly committed person does not warrant relief under Eighth Amendment principles, it clearly cannot prevail under a due process analysis, so Witt's claims will be analyzed as asserted, pursuant to the Eighth Amendment. See Hydrick, 466 F.3d at 696 (observing that the Eighth Amendment "provides too *little* protection for those whom the state cannot punish"); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (applying Eighth Amendment standards to evaluate pretrial detainees' Fourteenth Amendment claims).

used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

Here, the uncontested facts show that defendants Ervin and Abdussalaam did not subject Witt to excessive force. Defendants did not touch, push, or shove Witt while he was in their custody; they did not threaten, insult, or humiliate him before or during the search; and Witt suffered no physical harm or injury during the process. It is noteworthy in that regard that during his examination by Dr. Chaudry immediately after undergoing the search, Witt made no complaints of pain, and Dr. Chaudry's notes contain no observations of medical distress. Dkt. 22, Ex. 6, Physician's Progress Notes, p.1. Although Dr. Chaudry instructed Witt to contact the medical department if he later experienced pain or discomfort, Witt never did so. Id., pp. 1-2. In

subsequent administrative grievances filed at VCBR, Witt claimed that the search and examination by the defendants "could have" caused internal bleeding and "put him at risk," Compl., Ex. 4, but he never stated that he actually suffered any physical injury as the result of those occurrences until he filed his complaint in this federal action.

Under these circumstances, plaintiff's claim that defendants Ervin and Abdussalaam subjected him to an unconstitutional application of excessive force is without merit, and defendants are entitled to the summary judgment they seek. Because the Court will enter summary judgment in defendants' favor on the merits of plaintiff's claim, their alternate argument that they are entitled to qualified immunity for their actions need not be addressed.

B. Defendant Chaudry

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Such a claim requires two distinct elements. First, plaintiff must allege a medical need that is sufficiently serious to warrant constitutional protection. A condition is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "Courts consider evidence of a diagnosable eye condition to be significant in determining whether a plaintiff has alleged a serious medical condition." Flores v. New York City Health & Hospitals Corp., 2003 WL 21709512 at *3 (S.D.N.Y. July 21, 2003) (citation omitted); see, e.g., Cox v. District of Columbia, 834 F.Supp. 439, 440 (D.C. 1992) (holding glaucoma to be a serious ailment for Eighth Amendment purposes); accord, Todaro v. Ward, 565 F.2d 48 (2d Cir. 1977);

Richardson v. Nassau County, 277 F.Supp.2d 196, 202 (E.D.N.Y. 2003).

The second component of an Eighth Amendment claim is satisfied if plaintiff alleges deliberate indifference to a serious medical need "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). In order to act with deliberate indifference, an official must have been personally aware of facts indicating a substantial risk of serious harm, and also must have actually recognized the existence of such risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). Delay in providing an inmate with medically necessary surgery can amount to deliberate indifference. Webb v. Driver, 313 Fed. App'x 591 (4th Cir. 2008). However, an inadvertent failure to provide adequate medical care does not constitute an "unnecessary and wanton infliction of pain" and is not "repugnant to the conscience of mankind," and so does not amount to a violation of the Eighth Amendment, which instead requires a showing that the indifference was sufficiently egregious to offend "evolving standards of decency." Estelle, 429 U.S. at 105 - 06.

Here, the precise nature of the manner in which Witt believes Dr. Chaudry was deliberately indifferent to his serious medical needs is difficult to discern. According to the uncontested facts set forth above, Dr. Chaudry's sole involvement in the events in question was to determine whether a cavity search of Witt was medically necessary. He found that it was not, and Witt has not alleged that he subsequently suffered any actual harm as the result of that determination. Certainly, there has been no showing whatever that Dr. Chaudry's medical evaluation of Witt and his decision to forego a body cavity search were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

8

Miltier, 896 F.2d at 851. Accordingly, no constitutional violation has been demonstrated, and summary final judgment will be entered in Dr. Chaudry's favor.

### IV. Conclusion

For the foregoing reasons, the Motions for Summary Judgment of the defendants will be granted, and final judgment will be entered in their favor. An appropriate Order and Judgment shall issue.

Entered this 9th day of December 2011.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge